UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| ROBERT JACKSON, | : | Case No. 1:16-cv-993 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| OFFICER DANNY GIBSON, *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT DANA WILMOT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 24)**

This civil case is before the Court on the motion for summary judgment filed by Defendant Dana Wilmot, RN ("Mrs. Wilmot") and the parties' responsive memoranda (Docs. 29, 31).

## I. INTRODUCTION

On October 12, 2015, Plaintiff Robert Jackson ("Mr. Jackson") was arrested and transported to the Middletown City Jail ("Jail"). (Deposition of Robert Jackson ("Jackson Dep.") at 20).[1] Mr. Jackson began experiencing pain on the bottom of his right foot during his first night of incarceration. (*Id.* at 26). Mr. Jackson initially attributed the pain to an insect bite. (*Id.* at 26-27). The next day, October 13, 2015, Mr. Jackson's foot had developed a red puncture wound with pus inside, and he claims his right foot doubled in size compared to his left foot. (*Id.* at 37-38).

---

[1] Mr. Jackson's deposition is attached to Mrs. Wilmot's motion for summary judgment, starting at Doc. 24 at 14.

Mr. Jackson reported his pain to corrections officers and was told he needed to fill out a "kite," which is a nurse's slip or medical form, to receive treatment. (Jackson Dep. at 32, 39). Mr. Jackson submitted his first medical kite on October 14, 2015. (*Id.* at 40). Jackson's first kite stated that he had "something seriously wrong with the bottom of my right foot it feels like its about to fall off. It's the worst pain I have ever felt. It is double the size of my good foot. I don't know what's going on can I please get help." (Doc. 29-9). Mr. Jackson's foot was throbbing in pain and he could barely walk. (*Id.* at 40).

There was no medical response to Mr. Jackson's request on October 14 or October 15, 2015. (Jackson Dep. at 42-45). By October 16, 2015, Mr. Jackson was unable to leave his cell and moved his mat to the floor because it was difficult to get out of bed. (*Id.* at 47).

Sometime during either the night of October 16 or the morning of October 17, 2015, Mrs. Wilmot observed Mr. Jackson's foot. The parties disagree about the extent to which Mrs. Wilmot examined Mr. Jackson—Mr. Jackson claims she observed his foot from across the hall; Mrs. Wilmot claims she observed Mr. Jackson's foot up close after he stuck it through his cell bars. (Deposition of Dana Wilmot ("Wilmot Dep.") at 48-50). In any event, Mrs. Wilmot observed that Mr. Jackson's foot was not swollen, but that there was a flat black mark on the bottom of his foot. (Wilmot Dep. at 52). Mrs. Wilmot concluded that the mark was inconsistent with a spider bite, that the mark was possibly a blood blister, and that there was no reason for Mr. Jackson to go to the hospital. (*Id.* at 52-53).

2

On October 20, 2015, Mr. Jackson was released to Warren County to serve an outstanding warrant for unpaid funds from Franklin Municipal Court. (Jackson Dep. at 69). Mr. Jackson crawled to exit the Jail and the officer transporting Mr. Jackson—Officer Back—had to escort him into the vehicle. (*Id.* at 71). Officer Back determined that Mr. Jackson required medical attention. Accordingly, an ambulance was called and transported Mr. Jackson to Atrium Hospital. (*Id*. at 69-72).

At Atrium, the spot on the bottom of Mr. Jackson's foot was diagnosed as cellulitis. (Doc. 29-3). On October 20, 2015, a physician performed a drainage procedure. (*Id.*) On October 22, 2015, Mr. Jackson was admitted to UC Hospital and had surgery to address the cellulitis in his right foot. (Doc. 29-4). He was released to home health care.

On October 11, 2016, Mr. Jackson commenced this lawsuit.[2] The Complaint asserts one claim for relief, for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments. The only damage alleged in the Complaint is: "Jackson continues to experience problems with his foot. He has intermittent pain. And the surgery pulled his skin tight so that his toes are displaced." (Doc. 1 at P. 24). Mr. Jackson is not seeking damages for medical expenses or lost wages. (Jackson Dep. at 100).

---

[2] The Complaint also named Officer Danny Gibson. Mr. Jackson's claims against Officer Gibson were dismissed by stipulation. (Doc. 23).

On December 20, 2016, the Court entered a Calendar Order requiring, *inter alia*, Mr. Jackson to serve his expert disclosure(s) and report(s) by February 3, 2017. Mr. Jackson has not named or identified an expert.

## II. STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). Mr. Jackson argues Mrs. Wilmot violated the Eighth Amendment by being "deliberately indifferent to Jackson's serious medical

4

needs." (Doc. 1 at ¶ 16).  Mr. Jackson claims Mrs. Wilmot is liable for this constitutional violation under 42 U.S.C. § 1983.

The Supreme Court of the United States has held there are two elements to a deliberate indifference claim: (1) that in an objective sense, the deprivation of medical care is serious; and (2) plaintiff can prove, "in a subjective sense, that [the defendant] was deliberately indifferent to [the plaintiff's] health." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Additionally, proximate causation is an essential element of a § 1983 claim for damages.  *Horn v. Madison County*, 22 F.3d 653, 659 (6th Cir. 1994).

Mrs. Wilmot argues Mr. Jackson's claim fails as a matter of law because he has not designated an expert on the issue of causation.[3]  The Court agrees.

In order to establish causation for a factual question outside the lay understanding of jurors, the law generally requires the testimony of a qualified expert.  *See Rigney v. Marcum*, No. 06-187-REW, 2007 U.S. Dist. LEXIS 75798, at ** 32-33 (E.D. Ky. Oct. 11, 2007).

Accordingly, when a deliberate indifference claim involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show that the prisoner's injuries were caused or worsened by the defendants' conduct.  *Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006) (citing *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)); *Woodard v. O'Brien*, No. C07-0121-MWB, 2011 U.S. Dist. LEXIS

---

[3] Mrs. Wilmot also argues that Mr. Jackson cannot meet the objective or subjective prongs of a deliberate indifference claim.  Because the Court finds her argument regarding causation to be dispositive, the Court need not consider those arguments.

42979, at ** 20-21 (N.D. Iowa Apr. 20, 2011) (where plaintiff's "severe eye infection was a sophisticated medical condition" that required "he be seen and treated multiple times by specialists," the plaintiff could not establish causation without expert testimony); *Wooler v. Hickman County,* No. 5:05-cv-247-R, 2008 U.S. Dist. LEXIS 104983, at * 25 (W.D. Ky. Dec. 30, 2008) ("[A] claim for damages under § 1983 that arises from alleged deliberate indifference involving a sophisticated medical condition requires that expert testimony be offered to prove causation."); *Rigney*, 2007 U.S. Dist. LEXIS 75798, at ** 32-33 (explaining that the "causal link between administration of Benadryl and any adverse effect on [plaintiff]" was a "factual question outside the lay understanding of jurors" requiring expert testimony).

The rationale for requiring expert testimony in cases involving sophisticated medical conditions is straightforward: without expert testimony on the issue of causation, a layperson cannot determine the nature of a plaintiff's medical condition at the time he was denied treatment, the available treatments for it, the probable medical outcomes for each such treatment, or the detrimental effect, if any, of the alleged delay on those treatments and outcomes. *Edwards v. Graham Cty. Jail*, No. 1:16-cv-315-FDW, 2017 U.S. Dist. LEXIS 195984 (W.D. N. Car. Nov. 29, 2017).

Here, in order to determine whether Mrs. Wilmot's alleged deliberate indifference caused Mr. Jackson's injuries, the jury will have to consider the nature of Mr. Jackson's medical condition at the time Mrs. Wilmot saw him on October 16, 2015, the available treatments for the cellulitis on his foot, the probable outcomes for those treatments and—importantly—whether Mrs. Wilmot's delay in treating (or failure to treat) Mr. Jackson

6

caused or worsened his cellulitis and his alleged resulting foot injuries.[4] These issues are simply "not within the realm of lay understanding" and, accordingly, require expert testimony. As Mr. Jackson has not presented expert testimony on the issue of causation, his § 1983 claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Mrs. Wilmot's motion for summary judgment (Doc. 24) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date:  9/21/18

*Timothy S. Black*
Timothy S. Black
United States District Judge

---

[4] In addition to the cellulitis, Mr. Jackson claims that, ever since his injury, one of his toes is "curled up, like sticking up further than [his] other foot" and that it "hurts whenever [he] stands on it for a long period of time." (Jackson Dep. at 99-100). A lay jury simply could not determine whether the actions alleged by Mrs. Wilmot in this lawsuit caused those alleged injuries.